UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

ARGELY MARTINEZ,

Petitioner,

09 Civ. 648 (CS)(PED)

-against -

**REPORT AND RECOMMENDATION**

WILLIAM CONNELLY, Superintendent,

Respondent.
--------------------------------------------------------------X

**TO: THE HONORABLE CATHY SEIBEL UNITED STATES DISTRICT JUDGE**

Petitioner Argely Martinez ("Petitioner"), appearing pro se and incarcerated at the Fishkill Correctional Facility, brings the instant habeas corpus petition pursuant to 28 U.S.C. § 2254, challenging his June 1, 2005 conviction from the New York State Supreme Court, Rockland County. See Habeas Petition ("Pet.") ¶¶ 1-2. The conviction stems from an altercation between Petitioner, his girlfriend, and his girlfriend's father, in which each of them sustained stab wounds from a knife. Petitioner stands convicted of two counts of assault in the second degree (N.Y. Penal Law § 120.05(2)). Id. at ¶ 4. Following a jury trial, Petitioner was sentenced to consecutive determinate terms of five (5) years imprisonment in state prison on each of the assault counts, for a total of ten (10) years imprisonment. Id. at ¶ 3. Petitioner is currently serving that sentence.

Petitioner seeks habeas relief on four (4) separate grounds:

(1) that a statement Petitioner made to police prior to receiving a Miranda warning should have been suppressed, and that evidence discovered as a result of that statement should have been suppressed as fruit of the poisonous tree;

(2) that evidence demonstrating that Petitioner regularly carried a knife and that he previously hit his girlfriend was improperly admitted into evidence;

(3) that the sentences imposed by the trial court should have run concurrently, rather than consecutively; and

(4) ineffective assistance of counsel based upon various conduct of Petitioner's trial attorney.

Pet. ¶ 12.

For the reasons set forth below, I conclude, and respectfully recommend that Your Honor should conclude, that this petition for a writ of habeas corpus should be **DENIED**.

## I. BACKGROUND

### A. The Crime

On the afternoon of February 1, 2004, Petitioner had an argument with his girlfriend, Jahaira Gutierrez ("J. Gutierrez"), inside her apartment located in Haverstraw, New York. During that argument, Petitioner bit J. Gutierrez on the face, and used a knife to stab her in the neck, chest and back. When J. Gutierrez's father, Rafael Gutierrez ("R. Gutierrez"), attempted to help his daughter, a struggle ensued between R. Gutierrez and Petitioner, resulting in both Petitioner and R. Gutierrez sustaining stab wounds. Following the altercation, J. Gutierrez and her father left the apartment and called the police. Petitioner remained inside the apartment.

When police arrived, they discovered J. Gutierrez and her father sitting outside the apartment bleeding, surrounded by a large crowd of people. Two police officers entered the apartment through an open door and discovered Petitioner sitting on a bed. One of the police officers handcuffed Petitioner and then, without giving Petitioner a Miranda warning, asked whether he had any knives or sharp objects on his person. Petitioner responded by indicating that the knife was inside a bedroom of the apartment. The officers immediately retrieved the

knife. Later, after waiving his Miranda rights, Petitioner gave a written statement regarding the incident.

**B. The Trial**

On or around August 18, 2004, a grand jury indicted Petitioner on two counts of attempted murder in the second degree and two counts of assault in the second degree. Prior to trial, Petitioner moved to suppress the oral and written statements he gave to police on the basis that the initial statement given to the arresting officer was made in response to a custodial interrogation that occurred prior to issuance of a Miranda warning. Petitioner also argued that the knife recovered by police as a result of Petitioner's initial statement was fruit of the poisonous tree. The court denied Petitioner's motion.

At a pre-trial Ventimigla hearing, the prosecution stated its intention of introducing evidence that Petitioner regularly carried a knife, and that he regularly physically abused J. Gutierrez. Although Petitioner's counsel argued that these items constituted inadmissible propensity evidence, the court found that they were probative on the issue of intent, rebutted Petitioner's justification defense, and were therefore admissible.

On April 21, 2005, the jury found Petitioner guilty on both of the second degree assault charges (N.Y. Penal Law § 120.05(2)), but acquitted him on both of the attempted murder charges. On June 1, 2005, the court sentenced Petitioner as noted above. Petitioner is currently serving that sentence.

## C. Post-Trial Proceedings

### 1. State Court Proceedings

#### a. *Direct Appeal*

On November 27, 2006, Petitioner filed a direct appeal of his conviction and sentence to the Second Department of the New York Supreme Court's Appellate Division ("Appellate Division"). On direct appeal, Petitioner advanced three arguments:

(1) that his statement to police regarding the knife, made prior to any Miranda warning, should have been suppressed, and that the knife itself should have been suppressed as fruit of the poisonous tree;

(2) that the trial court erred by allowing the prosecution to introduce, on its direct case, evidence that Petitioner regularly carried a knife and that he had hit J. Gutierrez in the past; and

(3) that Petitioner's two five-year sentences should have been made to run concurrently, rather than consecutively.

In July of 2007, Petitioner filed a supplemental pro se brief in which he attempted to raise claims of ineffective assistance of counsel and insufficient evidence. However, the Appellate Division rejected the supplemental pro se brief because it contained exhibits that were outside of the trial record. On March 4, 2008, the Appellate Division granted Petitioner's motion to withdraw his supplemental pro se brief, and therefore did not consider his ineffective assistance and insufficient evidence claims.

On July 1, 2008, the Appellate Division affirmed Petitioner's conviction and sentence in all respects. People v. Martinez, 860 N.Y.S.2d 632 (N.Y. App. Div. 2d Dep't 2008). As to the Miranda issue, the Appellate Division concluded that "[t]he officer's question did not have to be preceded by *Miranda* warnings because it was asked to ensure the officer's safety while he searched the defendant and was not an interrogation aimed at eliciting an incriminating statement." Id. at 633. As to Petitioner's evidentiary claims, the Appellate Division concluded

that "the proffered evidence was properly admitted because it was probative of [Petitioner's] intent and rebutted his defense of justification." Id. Finally, as to Petitioner's sentencing claim, the Appellate Division concluded that "[t]he imposition of consecutive terms of imprisonment was a proper exercise of the sentencing court's discretion and the sentence imposed was not excessive." Id. Although Petitioner sought leave to file an appeal in the Court of Appeals with respect to his Miranda and evidentiary error claims, his leave application was denied. People v. Martinez, 896 N.E.2d 103 (N.Y. 2008).

b. *Motion to Vacate Judgment and Set Aside Sentence*

On December 3, 2008, Petitioner filed a motion to vacate his conviction and set aside his sentence pursuant to CPL §§ 440.10 and 440.20 based upon a claim of ineffective assistance of counsel. On February 9, 2009, the trial court denied the motion, and Petitioner did not pursue an appeal of that decision.

c. *Motion to Set Aside Sentence*

On May 13, 2009, Petitioner filed a second motion to set aside his sentence pursuant to CPL § 440.20, this time on the basis that Petitioner's two five-year sentences should have been made to run concurrently, rather than consecutively. On June 16, 2009, the trial court denied Petitioner's motion. Petitioner applied for leave to appeal that decision, and the Appellate Division denied leave on September 9, 2009.

2. Federal Court Proceedings

Petitioner filed the instant petition on January 22, 2009, prior to resolution of his 2008 motion to vacate / set aside the sentence.[1] In the Petition, Petitioner asserts four claims:

---

[1] At the time Petitioner filed the petition, he also had not yet filed his May 13, 2009 motion to set aside the sentence.

(1) that the statement he made to police prior to receiving a Miranda warning should have been suppressed, and that the knife discovered as a result of that statement should have been suppressed as fruit of the poisonous tree;

(2) that evidence demonstrating that Petitioner regularly carried a knife and that he previously hit J. Gutierrez was improperly admitted into evidence;

(3) that the sentences imposed by the trial court should have run concurrently, rather than consecutively; and

(4) ineffective assistance of counsel based upon various conduct of Petitioner's trial attorney.

Docket # 1 (Petition).[2]

On March 10, 2009, Respondent moved to dismiss the petition on the basis that the ineffective assistance claim remained unexhausted, thereby rendering the petition a "mixed petition." Docket # 3 (Motion to Dismiss). Respondent filed a second memorandum of law ("MOL") and an affirmation in support of the motion on July 29, 2009. Docket ## 14-15. Although the March 10, 2009 motion to dismiss related only to Petitioner's failure to exhaust his ineffective assistance claim, Docket # 3, the MOL raises various arguments addressing the merits of and alleged procedural deficiencies underlying the petition. Docket # 15. In the MOL, Respondent also advised the Court (1) that Petitioner's time to appeal from the County Court's February 9, 2009 decision denying his ineffective assistance claim had expired, and (2) that Petitioner had filed a second motion to set aside the sentence pursuant to CPL § 440.20 on the ground of excessive sentence. On March 29, 2010, the Court entered an order denying Respondent's motion to dismiss and staying consideration of the petition pending resolution of Petitioner's excessive sentence claim in state court. Docket # 16. On July 27, 2010, after being

[2] Claims 1-3 incorporate by reference the corresponding arguments set forth in Petitioner's appellate brief, and Claim 4 incorporates by reference the argument set forth in Petitioner's December 3, 2008 motion to vacate / set aside the sentence. See Petition ¶ 12.

informed by Petitioner that all state remedies had been exhausted as to his excessive sentence claim, the Court entered an order lifting the stay. Docket # 17.

Although the Court afforded Respondent an opportunity to submit additional briefing in opposition to the petition, Docket # 17, Respondent advised the Court that it intended to rely upon the arguments set forth in its previously submitted MOL. In the MOL, Respondent argued that the petition must be dismissed because (1) all of the claims are procedurally defaulted; (2) it was not necessary for the arresting officer to issue a Miranda warning before questioning Petitioner on account of the "public safety" exception to the Miranda rule; (3) Petitioner's evidentiary arguments do not present any constitutional issue; (4) Petitioner's sentencing claim is unexhausted and otherwise fails on the merits; and (5) the state court's determination that Petitioner was not denied effective assistance of counsel was neither contrary to nor an unreasonable application of clearly established federal law. Docket # 15.

## II. DISCUSSION

### A. Applicable Law

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)). Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254. If there has been procedural compliance with these statutes, the court must then determine the appropriate standard of review applicable to the petitioner's claim(s) in accordance with § 2254(d). The procedural and substantive standards applicable to habeas review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), are summarized below.

1. Timeliness Requirement

A federal habeas corpus petition is subject to AEDPA's strict, one-year statute of limitations. See 28 U.S.C. § 2244(d). The statute provides four different potential starting points for the limitations period, and specifies that the latest of these shall apply. See id. § 2244(d)(1). Under the statute, the limitation period is tolled only during the pendency of a properly filed application for State post-conviction relief, or other collateral review, with respect to the judgment to be challenged by the petition. See id. § 2244(d)(2). The statute reads as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The one-year limitation period is subject to equitable tolling, which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." Holland v. Florida, 130 S. Ct. 2549, 2262 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). In the

Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (internal quotation omitted), which have "prevented [the petitioner] from filing his petition on time," Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (internal quotation marks and emphasis omitted). The applicant for equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing – a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Valverde, 224 F.3d at 134.

2. Exhaustion Requirement

A federal court may not grant habeas relief unless the petitioner has first exhausted his claims in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented"). The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claims. Rose v. Lundy, 455 U.S. 509, 518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review),

thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims." Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209, 221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). A claim may be "fairly presented" to the state courts therefore, even if the petitioner has not cited "chapter and verse of the Constitution," in one of several ways:

> (a) [R]eliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186, 194 (2d Cir. 1982). A habeas petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court, absent a showing of cause and prejudice, or a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir.

1991). Such a procedurally barred claim may be deemed exhausted by a federal habeas court. See, e.g., Reyes, 118 F.3d at 139. However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual innocence," Schlup v. Delo, 513 U.S. 298 (1995)), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless." Rhines v. Weber, 544 U.S. 269, 277 (2005); see 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Padilla v. Keane, 331 F. Supp.2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

3. Procedural Default

Even where an exhausted and timely habeas claim is raised, comity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon "an adequate and independent finding of a procedural default" to deny it. Harris, 489 U.S. at 262; see also Coleman v. Thompson, 501 U.S. 722, 730 (1991); Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995).

A state court decision will be "independent" when it "'fairly appears" to rest primarily on state law. Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (citing Colman, 501 U.S. at 740). A decision will be "adequate" if it is "'firmly established and regularly followed' by the

state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)).

    4.    AEDPA Standard of Review

       Before a federal court can determine whether a petitioner is entitled to federal habeas relief, the court must determine the proper standard of review under AEDPA for each of the petitioner's claims. 28 U.S.C. § 2254(d)(1)-(2). This statute "modifie[d] the role of federal habeas corpus courts in reviewing petitions filed by state prisoners," and imposed a more exacting standard of review. Williams v. Taylor, 529 U.S. 362, 402 (2000). For petitions filed after AEDPA became effective, federal courts must apply the following standard to cases in which the state court adjudicated on the merits of the claim:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). The deferential AEDPA standard of review will be triggered when the state court has both adjudicated the federal claim "on the merits," and reduced its disposition to judgment. Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).

       Under the first prong, a state court decision is contrary to federal law only if it "arrives at a conclusion opposite to that reached by the [the Supreme Court] on a question of law or if [it] decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A decision involves an "unreasonable application" of

Supreme Court precedent if the state court "identifies the correct governing legal rule from the Supreme Court cases but unreasonably applies it to the facts of the particular state prisoner's case," or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

Under the second prong of AEDPA, the factual findings of state courts are presumed to be correct. 28 U.S.C. § 2254(e)(1); see Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B. Procedural Default**

Respondent argues that Petitioner has procedurally defaulted on each of the claims set forth in the petition. MOL at 2-6. Specifically, Respondent asserts that Petitioner did not fairly present to the state court, in federal constitutional terms, his Miranda and evidentiary error claims, (grounds 1-2 of the petition), and that those claims are now procedurally barred as a result. MOL at 6-7. Respondent further argues that Petitioner's ineffective assistance and excessive sentencing claims (grounds 3-4 of the petition) are procedurally barred because they were never presented to the New York Court of Appeals at all. Respondent is mistaken as to the Miranda and evidentiary error claims (grounds 1-2), but correct as to the excessive sentencing and ineffective assistance claims (grounds 3-4).

1. *Miranda Claim*

Petitioner fairly presented his Miranda claim to each appropriate state court. Indeed, Petitioner asserted his Miranda claim during a pre-trial suppression hearing, on direct appeal, and, following affirmation of his conviction and sentence in the Appellate Division, Martinez,

860 N.Y.S.2d 632, Petitioner sought leave to appeal to the New York Court of Appeals. Petitioner's Miranda claim is, by definition, a constitutional claim, as it necessarily entails "reliance on pertinent federal cases employing constitutional analysis." Daye, 696 F.2d at 194. Indeed, Petitioner cited to Miranda in his appellate brief, as did the Appellate Division in affirming Petitioner's conviction and sentence. As such, Petitioner's Miranda claim was fairly presented to all appropriate state courts in constitutional terms, is clearly exhausted for federal habeas purposes, and is not procedurally barred. Id.

2. *Molineux Claim*

According to Respondent, Petitioner's Molineux claim is procedurally barred because it was never presented in the state court as a violation of the United States Constitution or federal law, but rather, merely as a violation of New York state law. Although Respondent correctly argues that such a failure requires denial of federal habeas relief, Respondent is incorrect to the extent it concludes that this failure constitutes a procedural default under New York law.

Procedural default occurs when a petitioner's claims are barred by state procedural rules. See, e.g., Wainwright v. Sykes, 433 U.S. 72, 86-87, reh'g. denied, 434 U.S. 880 (1977). In the Second Circuit, there is a conclusive presumption that "a claim is not procedurally barred absent a clear statement to the contrary." Cox v. Miller, 296 F.3d 89, 101 (2d Cir. 2002). Here, the Appellate Division denied Petitioner's Molnieux claim on the merits, People v. Martinez, 860 N.Y.S.2d 632 (N.Y. App. Div. 2d Dep't 2008), and gave no indication that it was barred under state procedural rules. As such, Petitioner's Molnieux claim is not procedurally barred. Cox, 296 F.3d at 101.[3] As discussed in Section II.C, however, Petitioner's Molnieux claim cannot

[3] Petitioner could not, of course, file an additional direct appeal or collateral motion for the
[continued on following page]

form the basis for habeas relief because Petitioner does not assert that the allegedly erroneous rulings resulted in any violation of the United States Constitution or federal law.

3. *Excessive Sentence Claim*

Petitioner's excessive sentencing claim was not presented to the New York Court of Appeals. Instead, following denial of Petitioner's direct appeal, his appellate counsel advised the New York Court of Appeals that Petitioner was not seeking review of his excessive sentencing claim. See Respondent's Ex. I (Leave Application Letter Dated August 1, 2008, at 2) ("The remaining issue presented to the Appellate Division involved a discretionary sentencing determination, and is not included in this application."). As such, that claim remains unexhausted. Baldwin, 541 U.S. at 29. Petitioner cannot again seek leave to appeal to the Court of Appeals because he has already used the one application allowed under 22 NYCRR § 500.20(a)(2). Moreover, CPL §§ 440.10(2) and 440.20(2) bar additional collateral review of Petitioner's excessive sentence claim because it either was or could have been raised on direct appeal. See St. Helen v. Senkowski, 374 F.3d 181, 183 (2d Cir. 2004), cert. denied, 543 U.S. 1058 (2005).[4]

---

[continued from previous page]
purpose of re-asserting his state law evidentiary claims in federal constitutional terms, as such an appeal or collateral attack would be procedurally barred. CPL § 460.10(1)(a); CPL § 440.10(2) and 440.20(2).

[4] The Court notes that, following completion of his direct appeal, Petitioner filed a motion to set aside his sentence pursuant to CPL § 440.20 on the basis of excessive sentence. The trial court denied that motion because the excessive sentencing claim "was reviewed by the Appellate Division on the defendant's direct appeal from his judgment of conviction." Docket # 18 (Petitioner's Request to Lift Stay, Ex. A (Order Dated June 16, 2009)). The Appellate Division subsequently denied leave to appeal. Id. at Ex. B (Order of September 9, 2009). Although neither the trial court nor Appellate Division cited to any authority in denying Petitioner's CPL § 440.20 motion, it is clear that both were relying upon CPL § 440.20(2) – which itself constitutes a procedural bar under New York law. Thus, even though Petitioner attempted to re-assert his
[continued on following page]

Accordingly, Petitioner's excessive sentence claim is "'deemed exhausted' and can be considered in a federal habeas corpus proceeding" only "if the petitioner can show 'cause' and 'prejudice' for the failure to raise the issues in the state courts," Loving v. O'Keefe, 960 F. Supp. 46, 48 (S.D.N.Y. 1997), or if he can show that a "fundamental miscarriage of justice" will result unless this Court reviews the claim on the merits. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Because Petitioner has made no attempt to demonstrate cause or prejudice for his procedural default, or that a fundamental miscarriage of justice has occurred, his excessive sentencing claim cannot form the basis for federal habeas relief.

    4.  *Ineffective Assistance of Counsel*

Although Petitioner filed a motion to vacate his conviction and set aside his sentence pursuant to CPL §§ 440.10 and 440.20 based upon a claim of ineffective assistance of counsel, the trial court denied the motion on February 9, 2009 and Petitioner did not pursue an appeal of that decision. Petitioner's failure to pursue an appeal of the trial court's ruling renders his ineffective assistance claim procedurally barred.

A criminal defendant has thirty days from denial of a motion to vacate and/or motion to set aside a sentence in which to appeal to the Appellate Division. See CPL § 460.10(1)(a). Although New York law provides a statutory mechanism to file a late appeal, that mechanism itself imposes a time limit of one year "after the time for the taking of such appeal has expired."

---

[continued from previous page]
excessive sentencing claim following his unsuccessful appeal, his "failure to raise these claims on direct appeal bars habeas corpus review." Fardan v. Kuhlmann, 92 Civ. 8336, 1993 U.S. Dist. LEXIS 11052 (S.D.N.Y. Aug. 9, 1993) (citing Coleman, 501 U.S. 722).

Unreported cases are being sent to pro se petitioner. See Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009).

See N.Y. Crim. Proc. L. § 460.30; see also Restrepo v. Kelly, 178 F.3d 634, 636 (2d Cir. 1999)). Here, because more than a year and thirty days has elapsed since the trial court denied Petitioner's motion to vacate / set aside the sentence, that decision is no longer appealable. Id.[5]

Because Petitioner did not present his ineffective assistance claim to the Appellate Division, that claim is unexhausted. Baldwin, 541 U.S. at 29. Because Petitioner cannot seek further review of that claim, it is procedurally barred under New York law.[6] As such, Petitioner's ineffective assistance claim is "'deemed exhausted' and can be considered in a federal habeas corpus proceeding" only "if the petitioner can show 'cause' and 'prejudice' for the failure to raise the issues in the state courts," Loving, 960 F. Supp. at 48, or if he can show that a "fundamental miscarriage of justice" will result unless this Court reviews the claim on the merits. Coleman, 501 U.S. at 750. Because Petitioner has made no attempt to demonstrate cause or prejudice for his procedural default, or that a fundamental miscarriage of justice has occurred, his ineffective assistance claim cannot form the basis for federal habeas relief.

**C. Molineux Claim**

Petitioner's Molineux claim fails to state a basis for federal habeas relief because it does not assert any violation of the United States Constitution or federal law. A state court's

---

[5] Although Petitioner attempted to raise an ineffective assistance claim in his supplemental pro se brief on direct appeal, the Appellate Division rejected that brief in its entirety because it contained materials that were outside the trial record. Even though the Appellate Division afforded Petitioner an opportunity to correct the problem, he did not do so, but instead *voluntarily withdrew his ineffective assistance claim*. Petitioner's ineffective assistance claim was not exhausted on direct appeal.

[6] "Here, because petitioner failed to file a notice of appeal during the requisite thirty-day period following his [sentence], or seek an extension of time within the one year period thereafter, 'the court to which [petitioner] would be required to present his claim [] in order to meet the exhaustion requirement would now find [it] procedurally barred.'" Mingo v. Ercole, 08-CV-4818 (KAM), 2010 U.S. Dist. LEXIS 126966, *19 (E.D.N.Y. Nov. 30, 2010) (internal citations omitted) (quoting Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)).

evidentiary rulings, even if erroneous under state law, generally do not present constitutional issues cognizable in a habeas petition.  See Crane v. Kentucky, 476 U.S. 683, 689 (1986) ("We . . . acknowledge . . . our traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts.").  In order to prevail on a claim that an evidentiary error deprived a defendant of due process, he must show that the error "was so pervasive as to have denied him a fundamentally fair trial."  Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985) (citing United States v. Agurs, 427 U.S. 97, 108 (1976)); see also Hughes v. Phillips, 457 F.Supp. 2d 343, 367 (S.D.N.Y. 2006).  The erroneous admission of evidence must have been "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it."  Collins, 755 F.2d at 19.  The evidence must be "crucial, critical, highly significant."  Id. at 19 (citation omitted).  In assessing materiality, the court reviews the admitted evidence "in light of the entire record before the jury."  Id.

　　　As noted above, Petitioner's Molineaux claim is based solely upon alleged violations of New York law.  Petitioner cites no federal authorities in support of his argument, nor does he argue that the trial court's rulings rose to the level of a due process violation or denied him a fundamentally fair trial.  Construing the petition as attempting to raise the strongest claims it suggests, Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006), Petitioner's evidentiary claims at most constitute errors of state law.  Because a federal court may not grant habeas relief on the basis of such errors, Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law."), Petitioner's claims of evidentiary error do not provide a basis for habeas relief.

**D. Miranda / "Public Safety" Exception**

Petitioner next argues that his statement to the arresting officer regarding the existence and location of the knife should have been suppressed because Petitioner made that statement while in custody but prior to receiving a Miranda warning, and in response to a question posed by the arresting officer. Along similar lines, Petitioner asserts that the knife recovered by police following Petitioner's statement should have been suppressed as fruit of the poisonous tree. Respondent argues that, given the exigent circumstances in which the arresting officer questioned Petitioner, it was not necessary to issue a Miranda warning on account of the "public safety" exception to the Miranda rule. The Court agrees with Respondent.

The Fifth Amendment guarantee that no person shall be "compelled in any criminal case to be a witness against himself" protects individuals subjected to a custodial interrogation by police. Miranda v. Arizona, 384 U.S. 436, 460-61 (1966). Generally, if a suspect has not been advised of his Miranda rights prior to a custodial interrogation, the prosecution is barred from using statements at trial that were obtained during the interrogation. See Michigan v. Harvey, 494 U.S. 344, 350 (1990). "'The prophylactic Miranda warnings . . . [are] measures to insure that the right against compulsory self-incrimination [is] protected.'" New York v. Quarles, 467 U.S. 649, 654 (1984) (quoting Michigan v. Tucker, 417 U.S. 433 (1974)).

"The Supreme Court has, however, recognized a public safety-based exception to the Miranda requirement of prophylactic warnings prior to custodial interrogation." United States v. Ferguson, No. 10 Cr. 843 (LTS), 2011 U.S. Dist. LEXIS 37205, *9-10 (S.D.N.Y. April 4, 2011). In New York v. Quarles, 467 U.S. 649, 657 (1984), "the Court held that considerations of public safety can justify an officer's failure to provide Miranda warnings before asking questions which are intended to locate an abandoned weapon because 'the need for an answer to questions in a

situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the *Fifth Amendment's* privilege against self-incrimination." Ferguson, No. 10 Cr. 843 (LTS), 2011 U.S. Dist. LEXIS 37205, at *10 (citing Quarles, 467 U.S. at 657). "[T]he public safety exception clearly [also] encompasses questions necessary to secure the safety of police officers." United States v. Estrada, 430 F.3d 606, 612 (2d Cir. 2005). "Where the public safety exception applies, a defendant's statement – and the physical evidence recovered as a result of that statement – may be admitted into evidence at trial." Id. at 610.

"Decisions of the Second Circuit likewise make clear that the public safety exception is applied based on an objective evaluation of whether police questioning is reasonably related to an existing concern for personal or public safety, whether or not the defendant is at the time in a position to use the weapon himself, and whether or not the police have information as to the actual location of the [weapon]." Ferguson, No. 10 Cr. 843 (LTS), 2011 U.S. Dist. LEXIS 37205, at *12-13.

Here, the Appellate Division found that the arresting officer asked the question at issue "to ensure the officer's safety while he searched the defendant and [that the question] was not an interrogation aimed at eliciting an incriminating statement." People v. Martinez, 860 N.Y.S.2d 632, 633 (N.Y. App. Div. 2d Dep't 2008). Because the Appellate Division resolved this issue on the merits, those findings of fact are entitled to deference under AEDPA, Sellan, 261 F.3d at 312, and Petitioner may rebut the presumption of correctness as to the state court's findings only through clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Nelson, 121 F.3d at 833. Clear and convincing evidence means that quantum of proof that would be sufficient to support a conclusion with a high degree of certainty. See United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985) (citing Addington v. Texas, 441 U.S. 418 (1979)).

There is no dispute that Petitioner was in custody at the time the arresting officer posed the question at issue. Petitioner thus argues that the arresting officer was obligated to issue a Miranda warning before asking the question at issue, and that his failure to do so cannot be excused by the "public safety" exception since "there was no reason for the police to believe public safety or their own safety was at risk." Appellate Brief at 19. But rather than presenting clear and convincing evidence in support of his position, as is required in order to rebut the Appellate Division's findings of fact, Petitioner merely points out that (1) at the time the arresting officer questioned Petitioner, the stabbing victims were outside of the apartment, (2) no members of the public followed police into the apartment, and (3) the person police believed was responsible for the stabbings (Petitioner) had been taken into custody. Appellate Brief at 19-20.

But none of these facts, standing alone or taken together, refute the Appellate Division's finding that the arresting officer asked the question at issue in order to ensure his own safety. Indeed, at the moment the officers entered the apartment, they did not yet know whether other people who might have wanted to use the knife were inside the apartment. Trial Tr. at 671. Moreover, a "large" and "chaotic" "crowd," including Petitioner's two stabbing victims, was gathered outside the open door of the apartment at the time of Petitioner's arrest, any one of whom easily could have entered (or in the case of the victims, re-entered) the apartment. Trial Tr. at 646-47, 666. The uncertainty regarding the existence of others inside the apartment, coupled with the chaos that existed directly outside of the apartment, created a situation in which the need to locate the knife "outweigh[ed] the need for the prophylactic rule protecting the *Fifth Amendment's* privilege against self-incrimination." Quarles, 467 U.S. at 657. Although Petitioner has presented some evidence to downplay the *extent* of the danger presented by this situation, he has not presented clear and convincing evidence to rebut the Appellate Division's

finding that the arresting officer asked the question at issue in order "to ensure [his own] safety while he searched the defendant." Martinez, 860 N.Y.S.2d at 633.

Numerous courts confronted by similar facts and circumstances have reached a similar conclusion. In Quarles, for example, a woman informed police that she had been raped at gunpoint and that the perpetrator had entered a nearby supermarket. Quarles, 467 U.S. 649. The police located the man in the supermarket and discovered that he was wearing an empty gun holster. Id. at 652. After handcuffing the defendant but before advising him of his Miranda rights, the police asked the man where the gun was located. Id. The police then recovered the gun from an empty carton in an area to which the defendant had pointed. Id. The Supreme Court reversed the state court's suppression of both the statement and the firearm, holding that they were properly admissible pursuant to the "public safety" exception. Id. at 655-56. In so ruling, the court noted the danger posed by a gun hidden in a public place: an accomplice might make use of it or a member of the public might come upon it. Id. at 657.

Similarly, in the case of United States v. Newton, police received a report that a parolee had threatened to kill his mother and step-father, in whose apartment he was staying, and that he kept a gun in a shoe box by the door. 369 F.3d 659, 663 (2d Cir. 2004). Without first advising defendant of his Miranda rights, police placed him in handcuffs and asked whether he had any "contraband" in the apartment. Id. at 663-64. Defendant replied "only what is in the box" – which turned out to be an automatic firearm. Id. at 663-64. The Second Circuit held that the question posed by police fell within the "public safety" exception, reasoning that because the officers knew that the defendant possessed a gun and had recently threatened to kill his mother and step-father, they had an objectively reasonable belief that he was dangerous. Id. at 678. Although the defendant was, like Petitioner here, in handcuffs when the officer posed the

question, the court considered the presence of others in the apartment and the hostility of what was a volatile domestic dispute in concluding, even with the defendant restrained, that the un-located gun posed "a deadly risk to everyone on the premises." Id.

Finally, in the case of Estrada, police executed an arrest warrant for the defendant at his apartment. 430 F.3d 606. The warrant had been issued in connection with two probation violations, and police were aware of the defendant's criminal record, which included two assault convictions. Id. at 608. Defendant was already laying face-down on the floor when police first saw him. Id. One of the police officers asked if the defendant had any weapons, and as one of the other officers was standing over and attempting to handcuff the defendant, the defendant said, in substance, "I have a gun" or "I got a gun in my pocket." Id. In holding that the "public safety" exception applied to the defendant's statement, the court found it relevant that "the apartment had not been secured at the time of the questioning, the questions were aimed at controlling a potentially dangerous situation and relieving an immediate threat to the officers' safety." Id. at 613.

The case at bar is similar to Quarles, Newton, and Estrada in that the police officers in each case, as with the officers here, faced a risk that someone other than the defendant could find and potentially use the abandoned weapon. Thus, as was the case in Quarles, Newton, and Estrada, the "public safety" exception justified the arresting officer's limited questioning of Petitioner prior to issuance of a Miranda warning for the purpose of locating the weapon. Because the arresting officer's question was reasonably related to his concern for personal and public safety, the "public safety" exception to the Miranda rule applies. Ferguson, No. 10 Cr. 843 (LTS), 2011 U.S. Dist. LEXIS 37205, at *12-13. As such, the state court did not violate

Petitioner's constitutional rights by failing to suppress his statement to police, or by failing to suppress the knife. Id.

## III. CONCLUSION

For the reasons set forth above, I respectfully recommend that Petitioner's habeas petition be **DENIED** in its entirety.

## IV. NOTICE

Pursuant to 28 U.S.C. §636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) working days, from the date hereof to file written objections to this Report and Recommendation. Fed. R. Civ. P. 6(a). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Cathy Seibel, at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Seibel.

Dated: July 5, 2011
White Plains, N.Y.

Respectfully submitted,

PAUL E. DAVISON
UNITED STATES MAGISTRATE JUDGE

Copies of this Report and Recommendation are being mailed to:

Honorable Cathy Seibel
United States District Judge
300 Quarropas Street
White Plains, New York 10601

Argely Martinez
#05-A-2900
Fishkill Correctional Facility
P.O. Box 1245
Beacon, NY 12508

Carrie Anne Ciganek
District Attorney of Rockland County,
County Office Building
New City, NY 10956